UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HOLIDAY SYSTEMS INTERNATIONAL OF NEVADA, d/b/a Holiday Systems International,<br><br>      Plaintiff,<br><br>  v.<br><br>ILLUSION BOUTIQUE HOTEL,<br><br>      Defendant. | Case No. 2:10-cv-00592-MMD-RJJ<br><br>ORDER<br><br>(Plf.'s Motion for Default Judgment – dkt. no. 21). |

**I. SUMMARY**

Before the Court is Plaintiff's Motion for Default Judgment.  (Dkt. no. 21.) Defendant Illusion Boutique Hotel has not responded.  For the reasons stated below, the Motion is granted.

**II. BACKGROUND**

On August 10, 2007, Plaintiff Holiday Systems International of Nevada ("HSI"), a vacation-related services provider, entered into a Hotel Lease Agreement ("Lease Agreement") with Defendant Illusion Boutique Hotel ("IBH"), a hotel in Playa Del Carmen, Mexico. (Dkt. no. 21-1.)  Pursuant to the Lease Agreement, Plaintiff leased four of Defendant's hotel rooms per week at a rate of $399 per unit per week.  (Dkt. no. 21-1 at 8.)  Defendant guaranteed Plaintiff occupancy to four hotel units per week ("Guaranteed Units") for 104 weeks, beginning January 5, 2008, and ending January 2, 2010.  (*Id.*)

The Lease Agreement included the following provisions:

> 7. **GUEST NAME ASSIGNMENTS:** (b) In the event that [Plaintiff] has not assigned a guest name to a Lease unit, and providing that [Plaintiff] notifies [Defendant] at least 30-days prior to the check-in date of the Leased Unit, [Plaintiff] shall be permitted to change the check-in date of the Leased Unit to the same week in the following year (a Roll-Over) (e.g. week 32 in 2007 to week 32 in 2008). [Plaintiff] shall inform [Defendant] of the Roll-Over via facsimile . . . or by email . . . . [Defendant] shall acknowledge completion of the Roll-Over by facsimile to [Plaintiff] . . . or by e-mail . . . .
>
> . . .
>
> 10. **LIABILITY:** . . . If [Defendant] cancels a reservation due to overbooking, [Defendant] accepts full responsibility and liability to rebook the guests into another resort of equal or greater quality in the same general area for the same time period.
>
> . . .
>
> 13. **ATTORNEYS FEES:** In the event of litigation results from or arises out of this Agreement or the performance thereof, the Parties agree to reimburse the prevailing Party's reasonable attorney's fees, court costs, and all other expenses . . . in addition to any other relief to which the prevailing Party may be entitled.
>
> . . .
>
> 16. **VENUE:** This Agreement is made in the state of Nevada and shall in all respects be governed by and construed in accordance with the laws of that State.

(Dkt. no. 21-1 at 9-11.)

On April 23, 2010, Plaintiff filed a Complaint against Defendant, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion. (Dkt. no. 1.) Plaintiff alleges that from approximately August 2009 to December 2009, Defendant refused to comply with the Unit Roll-Over Allowance and refused to allow Plaintiff's members to check into hotel units subject to the Unit Roll-Over Allowance. (Dkt. no. 1 at 4.) Further, Plaintiff alleges that by February 2010, Defendant expressly stated that it would not comply with the Unit Roll-Over Allowance and that it would not honor any future inbound guests placed by Plaintiff for any units subject to the Unit Roll-Over Allowance. (Dkt. no. 1 at 4.) Plaintiff alleges that Defendant refused to honor 276 total Guaranteed Units. (Dkt. no. 21-1 at 4.) As a result, Plaintiff had to relocate its members into alternative hotels on 11 separate occasions. (Dkt. no. 21-1 at 4.) Plaintiff claims actual damages in the amount of $110,372.37, resulting from the total

1 loss of guaranteed units ($105,735.00) and the cost of relocating guests to other hotels
2 ($4,637.37).  (Dkt. no. 21 at 7.)  Further, Plaintiff requests an award of attorney's fees
3 and costs pursuant to the express terms of the Lease Agreement in the amount of
4 $65.467.30.  (Dkt. no. 21 at 8.)

5 On May 24, 2011, Plaintiff served Defendant with the Complaint and Summons
6 pursuant to Fed. R. Civ. P. 4(f) and the Inter-American Convention on Letters Rogatory.
7 (Dkt. nos 17 at 1 and 17-2 at 1); *see* Fed. R. Civ. P. 4(f) (governing service of process in
8 a foreign country).[1]  The Clerk of the Civil Court of the Judicial District of Solidarity,
9 Quintana Roo informed Defendant to respond to the Complaint within ninety days from
10 the date of the Summons.  (Dkt. no. 17 at 3.)  On October 18, 2011, Plaintiff moved for
11 Clerk's Entry of Default (dkt. no. 18), which the Clerk entered on November 2, 2011 (dkt.
12 no. 20).  On March 26, 2012, Plaintiff filed this Motion for Default Judgment.  (Dkt.
13 no. 21.)

14 **III.   LEGAL STANDARD**

15 Obtaining a default judgment is a two-step process governed by the Federal
16 Rules of Civil Procedure.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First,
17 "[w]hen a party against whom a judgment for affirmative relief is sought has failed to
18 plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk
19 must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after the clerk enters
20 default, a party must seek entry of default judgment under Rule 55(b).

21 Upon entry of default, the court takes the factual allegations in the non-defaulting
22 party's complaint as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th
23 Cir. 1987) (citation omitted).  Nonetheless, although entry of default by the clerk is a
24 prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is

---

[1] Although Fed. R. Civ. P. 4(f) provides for serving an *individual* in a foreign country, Fed. R. Civ. P. 4(h)(2) provides that a *corporation* "must be served at a place not within the judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual."  Thus, Plaintiff properly served Defendant, a corporation, when it served Defendant in accordance with Fed. R. Civ. P. 4(f).

3

not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

## IV.  DISCUSSION

### A.  Procedural Requirements

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). First, the Clerk properly entered a default against Defendant pursuant to Fed. R. Civ. P. 55(a). (Dkt. no. 20.) Second, Plaintiff has provided that to the best of its knowledge, Defendant is not an infant or incompetent person, and is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. (Dkt. no. 21-1 at 3.) Third, insofar as Defendant has not answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. Thus, there is no procedural impediment to entering a default judgment.

### B.  *Eitel* Factors

#### 1.  Possibility of Prejudice

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). Here, Defendant has not answered, made an appearance, or otherwise responded to the Complaint. Due to Defendant's refusal to appear in this action, the possibility of prejudice to Plaintiff in the absence of default judgment is great.
///

If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery. Thus, this *Eitel* factor weighs in favor of entering default judgment.

### 2. Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see* Fed. R. Civ. P. 8. In the instant action, Plaintiff asserts the following claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; and (4) conversion.[2]

First, a "Plaintiff in a breach of contract claim must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). Here, Plaintiff has (1) provided the Lease Agreement signed by both parties (dkt. no. 21-1), (2) alleges that Defendant breached the contract by refusing to honor the Unit Roll-Over Allowance (dkt. no. 1 at 3-5), and (3) claims actual damage as a result of Defendant's failure to honor the Unit Roll-Over Allowance (dkt. nos 1 at 4 and 21-1 at 4, 14-16). Thus, the sufficiency of Plaintiff's Complaint with respect to the breach of contract claim favors granting default judgment.

Second, under Nevada law, "'[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *A.C. Shaw Const., Inc. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that (1) the plaintiff and defendant were parties to the contract, (2) the defendant owned a duty of good faith and fair dealing to the plaintiff, (3) the defendant breached its duty by performing in a manner unfaithful to the purpose

---

[2] Pursuant to section 16 of the Lease Agreement, the Court applies Nevada law for each cause of action. (Dkt. no. 21-1 at 11.)

of the contract, and (4) the plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels v. Butch Lewis Prod.*, 808 P.2d 919, 923 (Nev. 1991). In the Complaint, Plaintiff has (1) provided the Lease Agreement which identifies Plaintiff and Defendant as parties to the contract (dkt. no. 21-1), (2) stated that Nevada law imposes an implied duty of good faith and fair dealing in the performance of every contract (dkt. no. 1 at 5), (3) alleged that defendant breached its duty by refusing to comply with the express terms and conditions of the Unit Roll-Over Allowance (dkt. no. 1 at 4), and (4) claimed that Plaintiff's expectation that Defendant would honor the Unit Roll-Over Allowance pursuant to the Lease Agreement was denied (dkt. no. 1 at 4-5). Thus, the sufficiency of the Plaintiff's Complaint with respect to the breach of the covenant of good faith and fair dealing claim favors granting default judgment.

Third, an unjust enrichment claim, or "quasi-contract" claim, requires the plaintiff to establish "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment." *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010). However, a claim for unjust enrichment "cannot lie where there is an express written agreement" because "unjust enrichment is an equitable substitute for a contract." *Id*. Therefore, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract." *Leasepartners Corp. v. Robert L Brooks Trust Dated Nov. 12, 1975*, 924 P.2d 182, 187 (Nev. 1997). Accordingly, because Plaintiff and Defendant entered into an express written agreement (dkt. no. 21-1), Plaintiff is barred from bringing an unjust enrichment claim. Thus, Plaintiff fails to state a claim of unjust enrichment against Defendant.

Fourth, to establish a conversion claim, a plaintiff must show "'[1] a distinct act of dominion wrongfully exerted over another's personal property [2] in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights.'" *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)

(quoting *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)). Here, Plaintiff alleges that (1) Defendant wrongfully converted monies paid to it by Plaintiff for hotel units subject to the Unit Roll-Over Allowance (2) in denial of Plaintiff's rights and title to the monies in the event that Defendant did not honor the Unit Roll-Over Allowance. (Dkt. no. 1 at 7.) In other words, Plaintiff alleges that Defendant had no rights, title or interest in and to any monies paid to it for hotel units subject to the Unit Roll-Over Allowance because Plaintiff received no value in return. (*Id.*) Thus, Plaintiff's Complaint with respect to the conversion claim favors granting default judgment.

In conclusion, Plaintiff has sufficiently pled three of its four claims for relief – (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) conversion. Since the sufficiency of the Complaint favors granting default judgment as to each of these claims, the second and third *Eitel* factors favor granting default judgment.

### 3. Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, Plaintiff seeks $110,372.37 in actual damages pursuant to the following:

> During the time period of March 2009 through December 2009, [defendant] refused to honor 276 total Guaranteed Units as required by the Hotel Lease Agreement. During this same timeframe, [Plaintiff] relocated [its] members for a total of 11 Guaranteed Units. Thus, in total [Plaintiff] paid [Defendant] for 265 lost Guaranteed Units at a contractual price of $399.00 per Guaranteed Unit per week, for the total sum of $105,735.00 for Guaranteed Units that [Defendant] ultimately refused to honor as required by the Hotel Lease Agreement. . . . Furthermore, because [Defendant] refused to honor the Unit Roll-Over Allowance and to allow [Plaintiff's] members to check into hotel units subject to the Unit Roll-Over Allowance, on 11 occasions [Plaintiff] had to place [its] members in alternative hotel and rooming accommodations at [Plaintiff's] expense. [Plaintiff] incurred expenses in the total amount of $4,637.37 for its placement of [its] members in alternative hotel and rooming accommodations.

(Dkt. no. 21-1 at 4-5.)

7

Based on the evidence presented, the Court concludes that the damages Plaintiff seeks are consistent with the terms of the contract. Therefore, the fourth *Eitel* factor weighs in favor of entry of default judgment.

### 4.  Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* Accordingly, no genuine dispute of material facts would preclude granting Plaintiff's motion.

### 5.  Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The evidence shows that the Clerk of the Civil Court of the Judicial District of Solidarity, Quintana Roo, where the Defendant's principal place of business is located, served an employee of the Defendant at Defendant's principle place of business with the Summons and Complaint on May 24, 2011, pursuant to Fed. R. Civ. P. 4(f). (Dkt. no. 17 at 1-2.) Defendant received service of the Summons and Complaint five months prior to the Clerk's Entry of Default on November 2, 2011 (dkt. no. 20). Thus, given the extended period of time during which Defendant had notice of the Complaint and in which Defendant failed to answer or otherwise respond to the Complaint, it is unlikely that Defendant's failure to respond and subsequent default resulted from excusable neglect.

### 6.  Decision on the Merits

The seventh Eitel factor states that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not

///

1  impossible. Thus, the Court is not precluded from entering default judgment against
2  Defendants.

### C. Attorneys' Fees

"'In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule.'" *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1067 (N.D. Cal. 2012) (quoting *MRO Commc'ns v. Am. Te. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) (alternation in original). Under Nevada law, "[t]he compensation of an attorney and counselor for his or her services is governed by agreement, express or implied, which is not restrained by law." NRS § 18.010(1). Here, the parties signed a contract which provides that "[i]n the event litigation results from or arises out of this Agreement or the performance thereof, the Parties agree to reimburse the prevailing Party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled." (Dkt. no. 21-1 at 10.) A party prevails under NRS § 18.010 "'if it succeeds on any significant issue in litigation which achieves some of the benefit it sought in bringing suit,'" *Valley Electric Ass'n v. Overfield*, 106 P.3d 1198, 1200 (Nev. 2005) (quoting *Women's Federal S & L Ass'n v. Nevada Nat. Bank*, 623 F. Supp. 467, 470 (D. Nev. 1985), provided that judgment is monetary in nature. *Smith v. Crown Financial Services*, 890 P.2d 769, 774 (Nev. 1995).

This action arises out of Defendant's alleged refusal to perform under the Lease Agreement. Because the Court found default judgment in favor of Plaintiff in the amount of $110,372.37, Plaintiff is deemed the prevailing party. Plaintiff has demonstrated that the Lease Agreement provides for Plaintiff, as the prevailing party, to be awarded reasonable attorneys' fees and costs. Thus, Plaintiff requests $65,467.30 for attorneys' fees and costs.

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d

1115, 1119 (9th Cir. 2000). The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the Court decides whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild*, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

The factors the Ninth Circuit set forth in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996). Further, the sixth factor, whether the fee is fixed or contingent, *may not* be considered in the lodestar calculation. *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987). Finally, only in "rare and exceptional cases" should a court adjust the lodestar figure. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations omitted). *See also Fischer*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

### 1. Reasonable Hourly Rate

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the

prevailing market rates of attorneys practicing in the forum community for "similar services by lawyers of reasonably comparable skill, experience and reputation." *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). To inform and assist the court in the exercise of its discretion, "[t]he party seeking an award of fees should submit evidence supporting the . . . rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). A rate determined through affidavits is normally deemed to be reasonable. *Blum*, 465 U.S. 895-96 n.11.

Plaintiff requests reimbursement of attorneys' fees as follows:

1. $305.88[3] per hour for James D. Boyle, attorney at the law firm Santoro, Driggs, Walch, Kearney, Holley, and Thompson ("SDW"), based on his thirteen years of experience in business and commercial litigation practice, which encompasses breach of contract and related claims.

2. $375.00 per hour for SDW Attorney Ronald J. Thompson based on his experience in areas of corporate matters and litigation. Mr. Thompson graduated from the University of California, Los Angeles School of Law in May 1994.

3. $200.00 per hour for SDW Attorney E. Derek Jamison. Mr. Jamison graduated from George Washington University Law School in 2009.

4. $150.00 per hour for Joy Jones, a paralegal at SDW, based on her eight years of paralegal experience.

5. $250.00 per hour for Cesar I. Ochoa, an attorney at the law firm Enriquez, Gonzalez, Aguirre y Ochoa, S.C. ("EGAO"), based on his experience in corporate matters.

---

[3] Mr. Boyle testifies that during the course of this action, his billing rate for this matter ranged from $280.00 per hour to $310.00 per hour. (Dkt. no. 21-2 at 4.) However, in his affidavit, Mr. Boyle states that he has billed Plaintiff for 27.20 hours of work, for an aggregate of fees billed totaling $8,320.00. (*Id.*) Thus, Mr. Boyle's average hourly rate for this matter is $305.88 ($8,320 divided by 27.20).

6. $250.00 per hour for EGAO Attorney Mr. Sotelo based on his experience in corporate matters and litigation, which encompasses breach of contract and related claims.

7. $250.00 per hour for Attorney Felipe Mendoza, a partner at EGAO.

8. $200.00 per hour for Attorney James O'Reilly and Adolfo Samaniego, associate attorneys at EGAO.

9. $180.00 per hour for Attorney Jose Luis Arzaga, an associate attorney at EGAO.

10. $80.00 per hour for Juan Carlos Saldivar, a legal assistant at EGAO.

(Dkt nos. 21-2 at 3-4 and 21-3 at 3-4.)

Plaintiff offers the affidavits of its counsel and counsel's billing statements to support its request for fees and costs and to demonstrate that the attorneys' fees requested are reasonable under the circumstances. (Dkt. no. 21-1 and 21-3.) Counsel's hourly rates range from $180 to $375 depending on their level of experience. The Court finds that such rates are reasonable.

### 2. Reasonable Hours Expended

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The district court also should exclude from this initial fee calculation hours that were 'not reasonably expended'." *Hensley*, 461 U.S. at 433-34 (citation omitted). "In other words, the court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Business Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation omitted); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Plaintiff's attorneys have spent 198.05 hours working on the case. After reviewing Plaintiffs' attached Exhibits B and C, the Court agrees and finds that Plaintiffs'

calculation of 198.05 hours of attorney labor is a reasonable amount of time spent on this litigation, given that Plaintiff had to effectuate service of process on Defendant at its principal place of business in Mexico.

Mr. Boyle spent 27.20 hours working on the case for an aggregate of fees billed totaling $8,320.00. Mr. Thompson spent 7.10 hours working on the case for an aggregate of fees billed totaling $2,662.50. Mr. Jamison spent 0.90 hours working on the case for an aggregate of fees billed totaling $180.00. Ms. Jones spent 37.35 hours working on the case for an aggregate of fees billed totaling $5,602.50. (Dkt. no. 21-2 at 4-5.) Thus, 72.55 hours of reasonable expended time multiplied by the SDW attorneys' respective reasonable fees equals a lodestar of $16,765.00.

Mr. Ochoa spent 7.50 hours working on the case for an aggregate of fees billed totaling $1,875.00. Mr. Sotelo spent 87 hours working on the case for an aggregate of fees billed totaling $21,750.00. Mr. O'Reilly spent 15.50 hours working on the case for an aggregate of fees billed totaling $3,100.00. Mr. Samaniego spent 11.50 hours working on the case for an aggregate of fees billed totaling $2,300.00. Mr. Arzago spent 2 hours working on the case for an aggregate of fees billed totaling $360.00. Mr. Saldivar spent 1.50 hours working on the case for an aggregate of fees billed totaling $120.00. Mr. Mendoza spent 0.50 hours working on the case for an aggregate of fees billed totaling $125.00. (Dkt. no. 21-3 at 4-5.) Thus, 125.50 hours of reasonable expended time multiplied by the EGAO attorneys' respective reasonable fees equals a lodestar of $29,630.00.

This Court need not consider the *Kerr* factors to determine what amount, if any, the lodestar should be adjusted. Therefore, the Court grants fees in the amount of $46,395.00.

**D.   Costs**

In the Lease Agreement, the parties agreed that the prevailing party would be reimbursed for its reasonable attorney's fees, court costs, and all other expenses if litigation results from or arises out of the Lease Agreement. (Dkt. no. 21-1 at 10.)

Plaintiff claims costs in the amount of $19,072.30 – $1,580.92 billed by SDW (dkt. no. 21-2 at 5) and $17,491.38 billed by EGAO (dkt. no. 21-3 at 5). Plaintiff has submitted two affidavits supporting the expenses claimed and comprehensive transactions listings from both SDW and EGAO detailing costs incurred in prosecuting this matter. Thus, the Court grants Plaintiff's motion as it relates to costs.

### III.    CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment is GRANTED. The Clerk of the Court shall enter judgment against the Defendant in the amount of $110,372.37 for actual damages and $65,467.30 for attorneys' fees and costs plus accrued interest from the date of the judgment until paid.

DATED THIS 25th day of October 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE